The President Mr. Scarberry. Mr. Scarberry, on behalf of the Laurie Huebner and the appellant, may it please the court, I'm here today to ask the court to reverse the district court's granting of summary judgment in favor of the I-PEL-E's. In my opinion, there are three bases that compel the court to reverse that decision. The first one is that the district court failed to view the facts in the light most favorable to my client, who was the non-moving party at the district court level. Number two, the district court failed to consider the totality of the circumstances when determining whether probable cause existed for the arrest of Mrs. Huebner. The third one is that when it evaluated those facts and circumstances available to Deputy McDonough, it failed to properly consider whether the uncorroborated statement of the defendant was reasonably trustworthy in whether McDonough conducted a reasonable investigation as required by Kingsland v. City of Miami and the cases following that case. Can I ask you a question just to begin with Kingsland? You have this, you have a statement in your brief at page 19 that says the following. Based solely on Dobin's sworn statement, McDonough may have had probable cause for the arrest. However, that changed once he found no physical evidence corroborating her statements. So you admit that based solely on her statement, good enough, probable cause was good enough. And then you say everything changed when there was a lack of physical evidence. Explain to me why it is that the lack of physical evidence changes anything, given what's required under Florida Battery and the facts of this case. Light touching. I'm sorry? Yes, light touching. Light touching. Yes, Your Honor. I think, and I do admit that a police officer can rely upon a victim's statement solely to form probable cause. I mean, I don't think it's debatable at all. Right. But I think that when you take the context of the complaint made by Mrs. Dobin, which was that my client allegedly grabbed her by the hair and punched her several times in the face and then scratched her wrist. I think it's those specific facts about what was done to her and the fact that when he investigated her, examined her, observed her, she exhibited no signs of any kind of markings on her face or even a scratch on her wrist. And so I think when you take that and not only that, but I also like to point out that Ms. Dobin made two accusations that night. She also made an accusation against Mr. Huebner, Lori's husband, stating that Mr. Huebner threw rocks at her vehicle while she was driving it. Right. But let me ask you this real quick, just so I'm clear. So it sounds like you agree that the officer could have relied solely on Dobin's statement to formulate probable cause. You also agree that the Florida Battery statute doesn't require much. And so simple touching would have been enough. So what you're relying on is instead sort of the facts and circumstances of the allegation here that there was punching and kicking and scratching. And I guess my question is, but that's not necessary to an arrest. Right. I mean, an arrest simply requires the touching. So even if the complainant now is kind of elaborating the details a bit, embellishing the details, exaggerating the details, we still have an arrestable offense, right? Right. But I think that what you must consider and what the court has said, what the 11th Circuit has said, what this court has said, is that you must consider the totality of the circumstances. So I think that when you take the totality of the circumstances, not to mention the fact that in addition to Ms. Dobin calling 911 that night, my client also called 911 that night. You know, so when you talk, you take that instance, you're talking about the other battery cases. I'm sorry. You called first. I believe Ms. Dobin called about nine minutes before Mrs. Huebner did. I'd have to refer back to the record. And the officer who comes and confronts your client, she doesn't express shock that he's there. She expresses disagreement about what happened. Right. My client's actually relieved. The officer now knows not only have I gotten a complaint from this person who says basically that she was battered, but I now know that in fact there is a relationship here. They were with each other recently. Now she's denying that she's the party who's at fault. He's got a lot more than he had just based on the report of the incident. Well, I would disagree with that, Your Honor. I would say that my client was relieved to see the officer that night. She was expecting to see a police officer come to her house that night. She was not surprised to see the officer because she in fact had called the police herself. So I think that as my brief states, she's surprised that she's about to be arrested. She's surprised when she's placed under arrest, the timing between when she's actually greeted by officer Deputy McDonough and the time she was arrested was very, very brief. I mean, but it's not as if there hasn't been an incident between the two of them. No. No, I can't. I cannot argue that. That is correct, Your Honor. Yeah. And so the encounter with her, with your client is in essence corroborating some of what he's been told by the complaining party. That's correct. Yes, Your Honor. That they had been at least in each other's proximity. All we have to have here, all the officer has to have is probable cause. It's not preponderance. It's not clear and convincing beyond a reason about anything like that. It's just probable cause. Right. I agree with that, Your Honor. But what I would like to point out is that when you look at the strain of cases that I've cited in the record and my brief, that there is some requirement to conduct a reasonable investigation of the case. And the court has said, this court has said that deputies cannot ignore information that's readily available to them. So, all right. So this is helpful. This is out of Kingsland, right? Where does, what is the immediately available exculpatory information that you're talking about? The first bit, which I understand is probably the least instructive bit, is my client's own declarations or my client's own statements regarding what had happened during her interaction with her sister. But the other, and I think the most important portion of it, is that there's two witnesses to the incident that are there at the property. It's my client's two teenage daughters that are approximately ages 16 and 18 at the time, and they witnessed the entire incident between my client and her, and Ms. Dobin. But you understand that when you have witnesses that are related to one of the complaining parties, that certainly an officer is entitled to take that into account, that the witness may be biased, in fact. I totally agree. I understand that officers are not required to judge credibility in these types of cases. However, the problem here is that the officer refused to even speak with them. And in fact, there was another deputy there, and once Mrs. Huebner, who was detained immediately upon her first interaction, was there, the deputies easily could have split the two daughters up, asked them both the same questions, gotten together, and just tried to figure out what happened. And in fact, in Abercrombie- Basically, you're establishing that for probable cause for an arrest, officers have to do a complete and thorough investigation. No, that's not what I'm asking, Your Honor. I'm saying that they need to do a reasonable investigation, and they can't ignore evidence that is readily available to them. I think this is very analogous to the case I relied upon in my brief, which is Abercrombie versus Beam. Not talking to those witnesses doesn't mean that it was, that there's something staring them in the face that they're ignoring. Well, I would- I mean, saying, I'm not going to talk to your minor daughter about what she says happened. Saying that isn't refusing to consider something that's staring you in the face that tells you something different. That's saying, you know, oh, yeah, so your minor daughter's going to take your side. Well, in Abercrombie versus Beam, there was two employees that happened at a gas service station where a client or customer of the service station accused the manager of committing a battery unheard. And there was two part-time employees. One of them happened to be the manager's sister who was present there. The deputy officer in that case refused to interview them, even though they're readily available. And this court found that they did not conduct a reasonable investigation, a lot of the information available to them. Just a word of warning, I wouldn't get too carried away with Beam because, as you know, it's an unpublished opinion. Yes, sir. And so, if you want to argue sort of the persuasiveness of the reasoning in that case, that's fine. But you understand that it doesn't bind us as precedent. I understand. Yes, Your Honor. And I'd also like to point out that, you know, her statement was uncorroborated by the physical evidence. And also, her statement against the husband was uncorroborated by the physical evidence of the vehicle. He also inspected the vehicle, and even Deputy McDonough, in his testimony, admitted that it's important to look for physical evidence corroborating allegations in order to make sure I can move forward with the case. My recollection, though, is that Florida law is equally permissive with respect to what I effectively take to be battery upon vehicles as it is battery upon people, right? You don't even have to have hit the car with the stones to have battered the vehicle. That's correct, Your Honor. So, physical evidence, like, eh. Exactly the same, exactly like battery, right? The Florida statute reads that throwing missiles at an occupied vehicle that may cause great harm or death is a crime, a second-degree felony. Right, but so I guess I'm trying to ask you, like, the absence of corroborating physical evidence, like so? It's analogous to a battery. There's no requirement that a battery actually results in an injury, only an unwanted touching. So, the analogy is that there's no physical evidence necessary to prove the crime or provide probable cause for the crime of throwing the missiles at the vehicle because there's no requirement that the rocks actually hit the vehicle, but there's also no requirement that there be any physical signs of unwanted touching in a battery case. And he decides that he doesn't have probable cause to arrest the husband because there's no corroborating evidence. However, with the same analogous evidence towards the battery, he determines that there's probable cause. But in fact, he had- Scott, Jim. Yes, sir. Lininger. May it please the court, my name is Carrie Lininger and I represent the appellees, Sheriff Rick Bradshaw and Deputy Peter McDonough. We respectfully request this court affirm the trial court summary judgment entered below. Deputy McDonough's arrest was consistent with Florida statutes and with the clearly established law of this court. He had reviewed the written statement provided by the victim. This statement was given after she had called 911 and then he spoke to her and further corroborated her written statement. And based on that, he went to the home of her sister and arrested her sister for simple battery. As this court has pointed out, a physical injury is not required. Just a simple touching is all that is required under Florida battery law. And so, based on the statements of the sister, the elements of the charge had been established and the officer had probable cause to make the arrest. The law in this circuit allows a police officer to rely simply on the statement of the victim when deciding whether they have probable cause. What about his point, though, that even though the Florida battery statute doesn't require anything more than slight touching, the crime, the assault, whatever, that this woman described went beyond simple touching. It was kicking and clawing and scratching and pulling hair, whatever. And so he gets there and he sees no evidence of that. At that point, is he thinking, like, this is not a credible allegation, I ought to dig deeper? He arrives about an hour after the incident occurred and he knew that the altercation occurred with the victim sitting in a car and the sister reaching in through the window. So there was somewhat limited access to really inflict any serious harm. In other words, the combatants, if you will, were not face-to-face slugging it out. One was sitting in a car and I believe the window was even rolled up a little bit and then the other sister is reaching in and attacking her. And so it was reasonable for the arresting officer to decide that an hour has passed. There was probably only a minimal impact caused by this altercation and it's not inconsistent with the victim's testimony that there are no marks left by this somewhat awkward altercation. And so he had probable cause to continue with the arrest. As the United States Supreme Court pointed out- What does the arrestee say to him, to the arresting officer, before she's placed under arrest? Pardon? What does the arrestee say to the arresting officer before she's placed under arrest? She says, I placed the call to 9-1-1 and she says, my sister hit me. She also says, you should talk to my two minor daughters. And so, but the police officer makes a decision that he's gonna rely on the statement of the victim and goes ahead and places- First one to call. The first one to call, that's right, your honor, and goes ahead and places her under arrest. So in essence, what the arrestee has done is corroborate that there was an incident, that this is her sister, and that there was some hitting during the incident. Absolutely. In fact, there's a lot of consistency in the statements by the two sisters. Of course, who started it and who hit who is what is debated. But that there was an altercation is certainly not debated. And so, the officer was within his rights to make this arrest and rely solely on the statement. And actually, what is in essence, three statements, or at least two plus a 9-1-1 call, to rely on the statement of the victim in making this arrest. As the United States Supreme Court has said in the District of Columbia versus Wesby case, probable cause is not a high bar. And certainly, that bar was met in this case. Furthermore, the plaintiff has failed to come forward with any pre-existing case law that would have put Deputy McDonough on notice that his conduct violated the Constitution. So I guess, he's going to say Kingsland, and so now you distinguish Kingsland. Okay. Kingsland is an extraordinarily unique case. It involved a motor vehicle accident, not a simple battery. It involved 20 police officers arriving at the scene. One of the persons involved in the car accident was a fellow police officer. And the other driver was the one eventually arrested. And there were conflicting efforts by the police officers, first to say that this other driver was intoxicated and under the influence of alcohol, and then to say that the other driver was under the influence of cannabis. And eventually, the other driver was found to be under the influence of neither drug. There was, all the test results came back negative. And ultimately, when the plaintiff brought her false arrest case, she says that these officers were manufacturing probable cause. The facts of Kingsland could not be more different than the facts of this case. Does not put arresting officers on notice that relying on the statement of a victim violates the Constitution in a case like this. And so, Your Honor, I see I have more time, but we are going to rely on our brief, unless there are further questions from this court. Always appreciate being given time back. All right, thank you. Mr. Scarberry. Thank you, Your Honor. I'd like to point out one thing. In fact, my client didn't actually say anything before she was arrested, other than, I'm Lori Huebner. That was the only thing she actually said before Deputy McDonough actually effectuated her arrest. It was, are you Lori Huebner? Yes. All right, all right. So let's say he puts cuffs on her. Is she right about what though was said by her? Generally speaking, yes, Your Honor. Okay. And another thing counsel did during her presentation, which I think the district court did too, which is one of my points, is that it took the lack of visible injuries to Ms. Dobin and inferred that in favor of the defendant who had filed motion for summary judgment in this case. The court noted it had been over an hour since the altercation took place. And it says, moreover the fact that Deputy McDonough did not find any visible injuries on Kathleen Dobin as she appeared calm at the time of his investigation, did not necessarily make Dobin's sworn statement untrustworthy. He arrived in the scene over an hour after the original altercation. That lapse of time could have had the effect of calming her and any red marks, inflammation on her arm could have cleared. Now that's not drawing every reasonable inference in favor of the non-moving party. That's drawing an inference in favor of the moving party in this case. But we also have a Florida statute that says mere touching is enough. So even if we acknowledge what you said potentially as erroneous, we still have the Florida statute, touching is enough. It's enough to have a victim's testimony to the police officer to give him probable cause. Correct, right, and if you read the cases that the court cited and also cited by defense counsel, the Arnold Rogers v. City of Orlando case, that case involves a battery as well during a road rage incident. However, it involves a shoving, doesn't involve punching. And so I think I completely agree with the court that the battery doesn't require a physical sign of any injury at all. But I think that when you start talking about the totality of the circumstances, and even in Westby, the- Here's the thing, what the district court's saying though is, I mean, you've admitted today, an uncorroborated statement from a victim can be enough to supply a probable cause, period, right? I cannot argue that, no sir. You can't argue with that? I can't argue with that statement, no. Yeah, all right, so we have that, and then the question is, does something else become evident to the officer that would cast doubt on that? And what the court's saying is, this other evidence doesn't really do it. The fact is, an hour has passed. The fact that there might, the way the incident is described, it would not necessarily be surprising that there wouldn't be a distraught person anymore, that she could have calmed down an hour later, that there wouldn't be any visible scratches given the awkwardness of how it was described as reaching into a car window. The point is, there's nothing to leap out to the officer that says, I can't rely on this, the first to call victim statement anymore. Right, well, what I would ask the court to do is consider what the Supreme Court said in Westby, District of Columbia v. Westby, and it said, and when referring to the decision of the district court, it says, the panel majority viewed each fact in isolation, rather than as a factor in the totality of circumstances. And it can't, that's not considering it in isolation. That is considering the totality of the circumstances. It may be you disagree with that, but that's not the point. This is only probable cause. Well, I would, right, but we're not also, I understand that probable cause in and of itself is not a high threshold, a high burden to meet. However, we're talking about what could a reasonable jury do, or was a reasonably trustworthy information. You find other district courts and other courts finding that a reasonable jury could infer this. And when I say totality of the circumstances, I believe you have her statement regarding the battery, which is uncorroborated by physical evidence. You have a statement regarding the crime committed by the husband, which is uncorroborated by evidence. Then you have the availability of two witnesses, the fact that my client also called 911, and his failure to do any kind of reasonable investigation to determine what any of those circumstances were. I think if you present that to a jury, a reasonable jury could infer that probable cause did not exist for my client's arrest. Can I ask you just a quick question about precedent? I take it you don't dispute that this case would require an extension of Kingsland. Right, this is not, Kingsland is a pretty outrageous case. Correct, if you wanna go all the way back and refer strictly to Kingsland, would this require some kind of extension of Kingsland? Yes, is it an extension this court has refused to do before? No, I mean, we have Gravy City of Roswell, we have Cosby City of Birmingham, we have the Abercrombie versus Beam case. So although it would require an extension from that original Kingsland case, I think this court has recognized that Kingsland does not apply only to these types of police cover-up cases. Thank you for your time, Your Honor.